IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| **KENNETH WARREN GEBHARDT**,<br><br>Plaintiff,<br><br>vs.<br><br>**ANDREW M. SAUL,** Commissioner of Social Security Administration,<br><br>Defendant. | CV-19-42-GF-BMM-JTJ<br><br>ORDER |

# INTRODUCTION

An Administrative Law Judge ("ALJ") issued a decision that denied Plaintiff Kenneth Warren Gebhardt ("Gebhardt") Social Security disability benefits. (Doc. 6 at 54.) The ALJ decided that Gebhardt was not disabled under the Social Security Act, and thus not eligible for disability or disability insurance benefits. (*Id.*) Gebhardt brings this action under 42 U.S.C. § 405(g) seeking judicial review of

that decision. (Docs. 2 & 13.) Gebhardt asks this Court to remand or reverse the Administrative Law Judge's ("ALJ") decision. (Doc. 13 at 34.)

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper because the Plaintiff resides in Cascade County, Montana. 29 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3).

## BACKGROUND

### *Legal Background*

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A),(B)).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled.

*Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof under steps one through four. *Bustamante*, 262 F.3d at 954. The Commissioner bears the burden of proof under step five. *Id.* The five steps of the inquiry are as follows:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954.

## Prior Proceedings

Gebhardt filed a Title II application for a period of disability and disability insurance benefits. Gebhardt claimed his disability began October 7, 2015. (Doc. 6

at 43.) The ALJ followed the five-step process to determine whether Gebhardt stood entitled to disability and disability insurance benefits.

**Step One:** The ALJ determined that Gebhardt had not engaged in substantial, gainful activity. (Doc. 6 at 45.)

**Step Two:** The ALJ determined that Gebhardt had, among others, severe impairments stemming from his atrial fibrillation and coronary artery disease. (*Id.*)

The ALJ also determined that although Gebhardt had impairments from anxiety and depression those impairments failed to prove severe. (*Id.* at 46.) To come to this conclusion, the ALJ walked through "the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments." (*Id.*) For the first three criteria—(1) understanding, remembering, or applying information, (2) interacting with others and (3) concentrating, persisting or maintaining pace—the ALJ determined that "evidence reveals" only a mild limitation in each area. (*Id.*) For the fourth area—adapting or managing oneself—the ALJ determined that the evidence reveals that Gebhardt had no limitation. (*Id.*)

**Step Three**: The ALJ determined that none of Gebhardt's impairments, in isolation or combination, met or medically equaled the severity of one the listed impairments in Social Security regulations.

**Step Four**: This step required the ALJ to determine whether Gebhardt's "residual functional capacity" allowed him to perform any past relevant work. To make this determination, the ALJ first had to decide what "residual functional capacity" Gebhardt had. (*Id.* at 49.) The ALJ looked at whether Gebhardt's impairments could lead to his alleged symptoms (e.g. could trouble standing stem from knee or back problems). And if so, the ALJ then needed to consider "the intensity, persistence, and limiting effects" of those symptoms.

The ALJ determined that Gebhardt's symptoms could stem from his severe impairments, but cast doubt on the claimed intensity, persistence, and limiting effects that the symptoms had on Gebhardt. The ALJ noted that Gebhardt's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 51.) Having largely disregarded Gebhardt's statements, the ALJ determined that Gebhardt had a residual functional capacity to perform "light work" with certain restrictions. The Court also determined, however, that even with the residual functional capacity to perform light work, Gebhardt could not perform any past relevant work. (*Id.* at 52-53.) This determination required the ALJ to move to Step Five.

**Step Five:** Step Four looks solely at whether Gebhardt could do work he had done previously. Step Five takes a more expansive view. It requires the ALJ to

determine whether, given his residual functional capacity, age, education, and work experience, Gebhardt can do any other work. Here, the ALJ relied on a vocational expert who was asked "if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills." (*Id.* at 53-54.) The vocational expert listed four jobs that fit this description. Based on this information, the ALJ concluded in Step Five that Gebhardt did not fit the definition of disabled that would warrant disability and disability insurance benefits. (*Id.* at 54.)

Gebhardt then appealed that determination to this Court. He asks this Court to reverse or remand the ALJ's decision on four grounds. First, he alleges that the ALJ improperly concluded that Gebhardt's anxiety and depression and cardiac impairments were not severe. Second, Gebhardt claims that the ALJ failed to provide valid reasons for discounting Gebhardt's statements about the intensity, persistence, and limiting effects of his symptoms. Third, the ALJ improperly discounted the evidence from his treating physicians. Fourth and finally, the ALJ failed to present a complete hypothetical question to the vocational expert.

**STANDARD OF REVIEW**

The Court conducts a limited review in this matter. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence also has been described as "more than a mere scintilla," but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Servs,*, 846 F.2d 573, 576 (9th Cir. 1988).

## ANALYSIS

**I. At Step Two, the ALJ correctly evaluated Gebhardt's unstable angina, severe left ventricular dysfunction post coronary artery bypass surgery, and anxiety and depression.**

Step Two requires the ALJ to determine whether the claimant has a medically determinable severe impairment or combination of impairments that prove severe. A impairment proves severe if "significantly limits [the person's] physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1520(c).

In assessing a disability claim, an ALJ may rely on the opinions of three types of physicians as follows: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining

physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should afford each physician's opinion a certain amount of deference based on that physician's classification. A treating physician's opinion proves entitled to the greatest weight. *Id.* ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). An examining physician's opinion is entitled, in turn, to a greater weight than a nonexamining physician's opinion. *Lester*, 81 F.3d at 830.

"In disability benefits cases such as this, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability— the claimant's ability to perform work." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Regardless of whether it's a medical opinion or opinion on ultimate issue of disability, an ALJ should afford a treating physician's opinion deference because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). Despite this deference, a treating physician's opinion is not necessarily conclusive as to either the physical condition or the ultimate issue of disability. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)

("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").

An ALJ should reject a treating physician's opinion only under certain circumstances. *Lester*, 81 F.3d at 830. An ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" when discounting a treating physician's uncontradicted opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotations omitted); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ may accomplish this task by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Gebhardt claims that the ALJ provided an inadequate weight to his treating physician's opinion. Gebhardt's argument fails because it misconstrues medical opinions with opinions on the ultimate question of disability. The ALJ accepts as fact Gebhardt's treating physician's opinion that Gebhardt has anxiety and depression. Gebhardt's treating physician never makes the next step and offers no opinion on the ultimate issue of disability, despite Gebhardt's claims to the contrary. To the extent that Gebhardt claims that the ALJ rejected the doctor's medical opinions, that argument would be undercut by the ALJ's repeated citations

to Gebhardt's treating physician's notes when assessing whether Gebhardt's anxiety or depression proved severe.

Gebhardt also claims that the ALJ failed to conclude that his impairments of "unstable angina" and "severe left ventricular dysfunction post coronary artery bypass surgery" qualified him for disability. This argument fails, as the Government points out, because the ALJ concluded that Gebhardt had severe cardiac impairments, including atrial fibrillation and coronary artery disease.

## II. The ALJ erred in determining Gebhardt's Residual Functional Capacity.

### a. The ALJ failed to provide an adequate explanation for discounting Gebhardt's claims about the intensity, persistence, and limiting effects of Gebhardt's symptoms and improperly excluded Gebhardt's treating p.

Gebhardt also appeals his decision on the grounds that the ALJ improperly disregarded his subjective claims about the intensity, persistence, and limiting effects of his symptoms. When no evidence of malingering exists, the Ninth Circuit requires an ALJ to provide "specific, clear and convincing reasons" to reject a claimant's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014). An ALJ may find a claimant not credible if the medical record contradicts the claimant's subjective testimony. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998). ALJs

do not satisfy the "specific, clear and convincing reasons" standard when they "simply state[] her non-credibility conclusion and then summarize[] the medical evidence supporting her . . . determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

The ALJ's analysis largely matches the analysis that the Ninth Circuit struck down in *Brown-Hunter*. This Court must do the same. The ALJ summarized Gebhardt's testimony; Tr. 46-47; summarily stated that Gebhardt's statements were "not entirely consistent with the medical evidence and other evidence in the record," Tr. 47; and then summarized the medical evidence supporting the ALJ's conclusion, Tr. 47-48. The ALJ makes no statement explaining which, if any, of Gebhardt's statements conflict with the medically summary that the ALJ provides.

The Government's argument to the contrary fails. The Government maintains that "the ALJ offered several specific, proper reasons for rejecting Gebhardt's statements." (Doc. 15 at 17.) In doing so, the Government essentially asks this Court to make the same errors made by the district court in *Brown-Hunter*. The Ninth Circuit noted that "[a]lthough the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make." *Brown-Hunter*, 806 F.3d at 494. Undoubtedly, when reading in quick succession the ALJ's summary of Gebhardt's claims and then the ALJ's summary of the

evidence supporting her decision, some inconsistencies seem apparent. Indeed, the Government points out a number of them in its brief. (Doc. 15 at 11-14.) The ALJ never identifies the alleged inconsistencies. *Brown-Hunter* requires the ALJ, not the Court or the parties, to explain what specific evidence was inconsistent with a specific claim from Gebhardt. *See Brown-Hunter*, 806 F.3d at 494. The Ninth Circuit has been clear: district courts "may not take a general finding—an unspecific conflict between Claimant's testimony . . . and her reports to doctors—and comb the administrative record to find specific conflicts." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). As the ALJ's analysis stands currently, the Court would have no choice but to comb the administrative record. The Court cannot affirm the ALJ's determination to discount Gebhardt's claims. *See id.*; *see id.* at 492 (noting that this type of error will "usually not be harmless").

### b. The ALJ failed to give adequate weight to Gebhardt's treating physicians' opinions.

The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause his alleged symptoms. Tr. 47. The ALJ found further, however, that Plaintiffs' statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with medical evidence and other evidence in the record." *Id.* In making this finding, the ALJ considered the opinions of state agency medical consultants and treating physicians. Tr. 48.

The ALJ considered the opinions of the state agency medical consultants, William Fernandez and Lewis J. Barton. *Id.* These consultants issued a determination that Gebhardt's medical condition allowed him to engage in "light work activity with some postural and environmental limitations." *Id.* The ALJ recognized that these opinions came from "non-treating, non-examining medical" sources whose opinions were based on "a thorough review of the available medical records and a comprehensive understanding of agency rules and regulations." *Id.* The ALJ viewed these opinions as "highly persuasive" and decided to afford them "some significant weight" because the opinions were "internally consistent and well supported by a reasonable explanation and the available evidence." *Id.*

Gebhardt claims that the ALJ erred by failing to account for any of his treating physician's opinions. Gebhardt's claims largely fails because none of the ALJ's findings prove inconsistent with the opinions of his doctors. All of the ALJ's findings prove consistent with Dr. Treptow's medical opinions and Dr. Treptow even wrote a letter that indicated Gebhardt could do some light work. Dr. Gray treated Gebhardt for his cardiac impairments, which figured prominently into the ALJ's determination that Gebhardt could perform light, rather than his regular, work. Gebhardt alleges that the ALJ conflicted with Dr. Thomas, but offers no evidence as to how.

The lone exception is with Dr. Gorsuch. Dr. Gorsuch treated Gebhardt for finger osteoarthritis and carpal tunnel syndrome. The Government all but concedes that Gorsuch's opinion was not properly considered by arguing that "Gebhardt cannot establish any *harmful* error" related to Gorsuch. (Doc. 15 at 21 (emphasis added).) The Government bases this argument on the ALJ's inclusion of upper extremity limitations in Gebhardt's residual functional capacity. The ALJ explicitly connected those upper extremity limitations to Gebhardt's other ailments, rather than to his carpal tunnel syndrome or finger osteoarthritis.

### III. The ALJ failed to present a complete hypothetical question to the vocational expert.

Once an ALJ has determined a claimant's residual functional capacity, the ALJ poses a hypothetical to a vocational expert. That hypothetical helps the vocational expert determine what kind of work someone with the limitations of the claimant could hypothetically do. *See Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). As discussed above, the ALJ failed to account for any limitations related to Gebhardt's carpal tunnel syndrome and finger osteoarthritis. Thus, the ALJ failed to present a complete hypothetical.

### ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

- Gebhardt's Motion for Summary Judgment (Doc. 13) is **GRANTED**.

- The Commissioner's final decision denying Gebhardt's claims for disability benefits is **REMANDED** for further proceedings consistent with this Order.

DATED this 27th day of August, 2020

_____
Brian Morris, Chief District Judge
United States District Court